### In re BERKLEY MULTI–UNITS, INC., Debtor.

**Robert E. VINNEY and Jeffrey W. Warren, as co-Trustees of Berkley Multi–Units, Inc., a Debtor–in–Possession, Plaintiffs,**

v.

**Roy ANDREWS or Joy Andrews, et al., Defendants.**

Bankruptcy No. 85–0433–8P1.
Adv. No. 89–027.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 3, 1989.

See also, Bkrtcy., 91 B.R. 150.

---

Jeffrey Warren, Tampa, Fla., for plaintiffs.

A. Clifton Black, Orlando, Fla., Brian J. Almengual, Catherine Peek McEwen, Tampa, Fla., Conrad Swanson, Plant City, Fla., Ronald Bidwell, Tampa, Fla., for defendants.

Lynne England, U.S. trustee.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 reorganization case and the immediate matter under consideration is a Motion for Summary Judgment filed by Robert E. Vinney and Jeffrey W. Warren, co-Trustees of Berkley Multi–Units, Inc., the Debtor–in–Possession in the above-captioned Chapter 11 case. The co-Trustees seek an Order from this Court entitling them to a judgment as a matter of law determining the validity, priority and amount of the liens of the various Defendants against the proceeds from the sale of Deerfield Yacht Basin (Deerfield). The Court has considered the Motion, together with the record, and finds and concludes as follows.

On February 25, 1985, Berkley Multi–Units, Inc. (Debtor), filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code. On June 24, 1985, this Court appointed Joseph A. Gassen as Trustee (Gassen) and on December 9, 1985, Robert E. Vinney (Vinney) was appointed as co-Trustee. Joseph A. Gassen resigned as co-Trustee and on January 22, 1987, Jeffrey W. Warren was appointed as co-Trustee (Warren). One of the assets of the Debtor was certain real property known as the Deerfield Yacht Basin. On August 19, 1986, this Court entered an Order approving the co-Trustees' Motion for Authorization to sell that property at a private sale free and clear of liens. Pursuant to that Order, the liens were to attach to the proceeds of the sale and the co-Trustees were to provide for notices to be sent with respect to the sale which would set the time for any objections to the sale and hearing on the confirmation of the sale. On December 10, 1986, this Court entered an Order authorizing the consummation of the sale after the notice of publication was sent to the various mortgagees who held an interest in that particular property of the Debtors. It appears that pursuant to the sale, the co-Trustees held in excess of $1.3 million dollars in an interest-earning escrow account, which represented the net proceeds of the sale of the Deerfield property.

On January 17, 1989, the co-Trustees initiated this adversary proceeding to obtain, inter alia, a determination of the priority of liens against the proceeds of the sale of the real property by the Debtor which was located in Broward County. It appears that the liens are held by "equal dignity mortgagees" (EDM's) by virtue of equal dignity mortgages encumbering the Deerfield property. The equal dignity mortgages were recorded in Broward County in eight different groups or batches beginning July 13, 1983, and ending March 6, 1984. It is undisputed that the recording periods were effectuated as follows.

The first group of equal dignity second mortgages were all mortgages from the Debtor to individual mortgagees. There were 45 of these mortgages, totalling $600,000. The mortgages were dated July 8, 1983, and were recorded consecutively in Official Book 10991, Pages 107–241, Public Records of Broward County, Florida, on July 13, 1983. All of the notes secured by these mortgages were executed on July 8, 1982, and were due on July 15, 1988.

The second group of equal dignity mortgages were all mortgages from the Debtor to individual mortgagees. There were 32 mortgages in this group, totalling $300,000. The mortgages were dated July 15, 1983, and were recorded consecutively in Official Record Book 11009, Pages 471–566, Public Records of Broward County, Florida, on July 20, 1983. All of the notes secured by these mortgages were dated July 15, 1983, and were due July 15, 1989. These notes were also callable or due at the option of the mortgagee on July 15, 1984, by giving 30 days written notice.

The third group of equal dignity second mortgages were all mortgages from the Debtor to individual mortgagees. There were 19 mortgages in this group, totalling $300,000. The mortgages were dated July 19, 1983, and were recorded consecutively in Official Record Book 11025, Pages 332–388, Public Records of Broward County, Florida, on July 27, 1983. All of the notes secured by the mortgages were dated July 19, 1983, and were due August 1, 1988. These notes were also callable at the option of the mortgagee on July 19, 1984, by giving 30 days written notice.

The fourth group of equal dignity second mortgages were all mortgages from Berkley to individual mortgagees. There were three such mortgages, totalling $78,000. The mortgages were dated July 25, 1983, and were recorded consecutively in Official Record Book 11025, Pages 389–397, Public Records of Broward County, Florida, on July 27, 1983. All of the notes secured by these mortgages were dated July 25, 1983, and were due August 1, 1988. These notes were also callable at the option of the mort-gagee on July 25, 1984, by giving 30 days written notice.

The fifth group of equal dignity second mortgages were all mortgages from Berkley to individual mortgagees. There were three such mortgages totalling $100,000. The mortgages were dated July 28, 1983, and were recorded consecutively in Official Record Book 11042, Pages 767–775, Public Records of Broward County, Florida, on August 3, 1983. All of the notes secured by these mortgages were dated July 28, 1983, and were due August 1, 1988. These mortgages were also callable at the option of the mortgagee on July 28, 1984, by giving 30 days written notice.

The sixth group of equal dignity second mortgages were all mortgages from Berkley to individual mortgagees. There were five such mortgages totalling $111,000. The mortgages were dated August 5, 1983, and were recorded consecutively in Official Record Book 11087, Pages 771–785, Public Records of Broward County, Florida, on August 24, 1983. All of the notes secured by these mortgages were dated August 5, 1983, and were due August 15, 1988. These notes were also callable at the option of the mortgagee on August 5, 1984, by giving 30 days written notice.

The seventh group of equal dignity second mortgages were all mortgages from Debtor to individual mortgagees. There were five such mortgages totalling $80,000. The mortgages were dated September 13, 1983, and were recorded consecutively in Official Record Book 11158, Pages 121–135, Public Records of Broward County, Florida, on September 26, 1983. All of the notes secured by these mortgages were dated September 13, 1983, and were due September 15, 1988. These notes were also callable at the option of the mortgagee on September 13, 1984, by giving 30 days written notice.

In all, there were 112 equal dignity second mortgages whose liens totalled $1,500,000. All of these 112 mortgages provided on the face of the document that they were "one second mortgage of equal dignity to be part of various equal dignity second mortgages to be given in the total amount

of $1,500,000." The mortgages further provided that:

FUTURE ADVANCES

Upon request by borrower, lender, at lender's option within five (5) years from the date of this mortgage, may make future advances to borrower; such future advances with interest thereon shall be secured by this mortgage when evidenced by promissory notes stating that said notes are secured hereby. At no time shall the principal amount of the indebtedness secured by the mortgage, not including sums advanced in accordance herewith to protect the security of this mortgage, exceed the original amount of the note, plus U.S. $1,500,000.

On March 6, 1984, an eighth group of equal dignity second mortgages were recorded. These mortgages were dated January 25, 1984, and were recorded consecutively in Official Record Book 11525, Pages 389–739, Public Records of Broward County, Florida, on July 27, 1984. There were 102 mortgages in this group, totalling $1,500,000. Of this group, 15 mortgages were from the Debtor to individual mortgagees; the remaining 87 mortgages in the group were from the Debtor to State Capital Corporation (State Capital). All of these mortgages save one were subsequently assigned from State Capital to various individuals. All of the notes secured by these mortgages were due February 1, 1989. These notes were also callable at the option of the mortgagee on January 26, 1985, by giving 30 days written notice. The mortgages in this batch provided on their face that:

This is one second mortgage of equal dignity to be part of various equal dignity second mortgages executed July 8, 1983, July 15, 1983, July 19, 1983, July 25, 1983, July 28, 1983, August 5, 1983, September 13, 1983, January 25, 1984, and in accordance with the future advance clause therein, the total of all equal dignity mortgages not to exceed $3,000,000.

On August 19, 1986, this Court entered an Order authorizing the Trustees' Motion for Authority to Sell Property at auction sale free and clear of liens, liens to attach to proceeds of sale, providing for certain bidding procedures and notices required with respect thereto, providing for a determination of fees and costs, and setting times for objections to sale and hearings on confirmation of sale. As mentioned above, pursuant to that order, the co-Trustees conducted a public auction of the Deerfield property. The co-Trustees' Motion for Partial Final Summary Judgment in this adversary proceeding requests that this Court establish the following distribution priority:

First, a surcharge to pay the legal fees and expenses incurred in connection with the determination of distribution priorities pursuant to 11 U.S.C. § 506(c). Second, a surcharge to pay a pro rata share of the unpaid administrative expenses of the Debtor pursuant to 11 U.S.C. § 506(c). Third, a surcharge to pay the legal fees and expenses incurred by the class representatives on behalf of the class members in the amount of $20,000 awarded to the law office of Simon & Schmidt on February 5, 1987, by the state trial court on the class representatives' Motion for attorney's fees. Fourth, an exclusive pro rata distribution of the remaining sales proceeds to all of the second EDM's based upon the equal dignity of the mortgages and future advance clause contained in the 110 mortgages.

The following Defendants filed their Answers which raised several disputes.

1. By Answer of David W. Fox and Elizabeth J. Fox (Fox) a first priority claim to distribution of funds claimed based upon a mortgage recorded July 13, 1983.

2. By Answer of Elmer P. Mayer and Ann A. Mayer (Mayer) a pro rata distribution to all second mortgage holders as claimed.

3. By Answer of Davido T. Cortez and Rose Cortez, a claim for full payment is made based upon a mortgage recorded July 20, 1983.

4. By Answer of Lester R. Palmer and Ellen M. Palmer, a claim for payment is made based upon a mortgage recorded on June 6, 1984.

5. By Answer of F. Carter Forrester and Thelma Z. Forrester a claim for full payment is made. The Court granted these Defendants until April 1, 1989, to file a cross-claim.

6. By Motion for Summary Judgment, Richard Reis and Delores Reis request entry of judgment for $10,000, together with interest, fees and costs.

7. By Motion for Summary Judgment, Lee Menzl and Elizabeth Menzl, Edward Bond and Wanda Bond, John R. Cross, Stanley Murray and Joan Murray, and Fletcher Plymire and Josephine Plymire and Shell B. Uhl and Sharon Uhl claim a pro rata distribution to all second mortgage holders.

In their Motion, the co-Trustees sought to pro rate distribution of the net sales proceeds among all EDM's regardless of the specified feelings respecting equal dignity treatment. Further, the co-Trustees have requested this Court to permit various surcharges against the sale proceeds prior to such pro rata distribution. The issues presented by this controversy are as follows:

(1) Whether the EDM's who agreed to equal dignity treatment up to a maximum of $1.5 million should be required to share the net sale proceeds with EDM's whose mortgages were recorded after the $1.5 million threshold had been reached.

(2) Whether surcharges for expenses unrelated to the Deerfield property or the sale proceeds may be allowed.

The Defendants, Fox, Cortez, Forrester, Reis, holders of equal dignity mortgages who agreed to equal dignity treatment up to a maximum of $1.5 million argue that they should not be required to share the net proceeds with EDM's whose mortgages were recorded after the $1.5 million threshold had been reached. In other words, these EDM's holding what would be classified as Category A second mortgages argue that they are entitled to priority over the EDM's holding Category B second mortgages and should not be required to share, pro rata, the net proceeds with the Category B second mortgage holders.

The Defendants, Mayer, Palmer, Uhl, Menzl, Bond, Cross, Murray, and Pylmire contend that a pro rata distribution upon all second EDM's should be made. Their contention is based on the argument that as second equal dignity mortgage holders, they all should be entitled to the proceeds in the order of the respected stated priority group, i.e., first mortgagee, second equal dignity mortgagee, etc., and that those sharing a given stated mortgage priority, such as the second EDM's, should share pro rata with those in the same respective mortgage priority class, rather than to have the mortgage of each individual equal dignity mortgage determined by the precise recorded minute and second of each equal dignity mortgage.

■ The Court has considered the various contentions of the parties and is mindful of Florida's recording statutes, § 695.01, *et seq.*, (1987), that is, that the first in time in recording is the first in priority. However, this Court is also mindful that the first in time priorities may be altered by agreement of the parties. *Tippett v. Frank*, 238 So.2d 671 (Fla. 3rd DCA 1970).

Based on these general principles, it is clear that although the first batch of equal dignity mortgages, or EDM's, were recorded first, they shall not necessarily be first in priority since by the very terms of their mortgages, it is indicated that future advances could be made which would be secured by the same mortgage as the EDM's, provided, however, that the amount of indebtedness should not surpass the original amount of the note, plus $1,500,000.

Notwithstanding this language, it is the contention of the first batch of EDM's that although they were put on notice, that the total shared indebtedness might reach $3 million, which is precisely the total sum, including the eighth batch, the future advances information did not serve as a notice to them that they would be sharing their status with subsequent equal dignity second mortgagees, since these future advances were to be limited to those made by the lender. These EDM's argue that they were the lender and that the giving of a

mortgage to State Capital subsequently did not come within the contemplation of the future advance language.

■ This Court is satisfied, however, that this interpretation by the first batch of EDM's strains logic. First, each mortgagee in the first batch knew that they were in a shared group in which mortgage loans were being made by others besides themselves. This is what the term, "equal dignity" discloses to them on the face of the mortgage. They, therefore, knew that the word, "lender", would not limit future advances to sums advanced by themselves. In summary, the subject "future advances" language appearing on the face of each mortgage clearly informs each mortgagee in the first batch of the EDM's that he or she would be in a shared position which might total as much as $3 million. This is precisely what occurred here, and, therefore, this Court is convinced that it would be inequitable to carve out the eighth recording batch of second EDM holders and to decide that they should not share in the proceeds with all the other EDM's. This Court has consistently held in other proceedings that proceeds of the sale of mortgaged premises should be paid in the order of the respective stated priority groups, i.e., first mortgagee, second equal dignity mortgagee, etc., and those sharing a given stated mortgage priority should share pro rata with those in the same respective mortgage class. *See In re Multi–National Motel Management, Inc.,* Case No. 85–434 (Bkrtcy.M.D.Fla.)

Based on the foregoing, this Court is satisfied that the co-Trustees' Motion for Partial Summary Judgment is well taken, and they are entitled to a determination as a matter of law that all of the second equal dignity mortgagees shall share pro rata in the distribution of the remaining sale proceeds.

This, however, leaves for consideration, the Motion for Partial Summary Judgment filed by the co-Trustees as it relates to the surcharges for expenses connected to the sale of the Deerfield property. Some of the Defendants in the above-captioned adversary proceeding opposed the surcharges for expenses on the basis that the expenses were unrelated to the Deerfield property

and argued that only surcharges for reasonable and necessary expenses of preserving the Deerfield property and sale proceeds from the property should be allowed.

■ Section 506(c) of the Bankruptcy Code is the authority for the co-Trustee's request to surcharge the sale proceeds for certain expenses in connection with this adversary proceeding in the Debtor's case. That Section limits a trustee's recovery in several ways. First, the recovery is limited to the extent of any benefit of the holder of a secured claim. Second, the trustee must establish in quantifiable terms that the expenses were incurred directly to protect and preserve the collateral. Only if these specific surcharges sought by the co-Trustees satisfy those conditions can the surcharge be allowed.

While this Court is satisfied that as a general proposition, the co-Trustees are entitled to surcharge the sale proceeds, this Court is unable to make a determination as contemplated by that Section, as to the specific nature and amount of surcharges. For example, this Court cannot make a determination whether the administrative expenses are related to the general administration of the Debtor's case or should be surcharged against the sale proceeds of the Deerfield property. Inasmuch as the administrative expenses requested by the co-Trustees to be surcharged are not specifically set forth nor proved up nor allocated, this Court is satisfied that there remains an issue of fact, and, therefore, the Motion for Partial Summary Judgment with respect to the surcharge must be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the co-Trustees' Motion for Partial Summary Judgment as it relates to the issue of surcharge for administrative expenses, be, and the same is hereby, denied.

DONE AND ORDERED.